UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

Byron A. Bradford,                                                                                            Plaintiff,

v.                                                         Civil Action No. 3:14-cv-48-DJH

Phillip Bramblett et al.,                                                               Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' motion for summary judgment (DN 14).[1] The matter being ripe, the Court will grant the motion in part and deny it in part for the following reasons.

**I.**

Plaintiff Byron A. Bradford filed a *pro se*, *in forma pauperis* 42 U.S.C. § 1983 complaint against Kentucky Department of Corrections Commissioner LaDonna Thompson and three employees at the Luther Luckett Correctional Complex (LLCC): Sergeant Linda Wilder, Deputy Warden Phillip Bramblett, and Warden Greg Howard. According to the complaint, in 2009, while incarcerated at the Eastern Kentucky Correction Complex, Plaintiff purchased a pair of Timberland graphite composite work boots because he had a medical condition requiring wide-toed shoes. Defendant Bramblett authorized the purchase of the boots. Subsequently, both Plaintiff and Defendant Bramblett were transferred to LLCC. In 2012, Plaintiff was transferred to the Kentucky State Reformatory to undergo some medical treatment. Apparently, while he was gone, he was required to store his personal property at LLCC. After returning to LLCC, Plaintiff was told by Defendant Wilder that he could not retrieve his chess set because it had weighted pieces. Plaintiff had owned this chess set within the prison system for nine years at this time. Defendant Wilder then asked Plaintiff if his work boots were steel-toed. Although

---

[1] The scope of the current motion for summary judgment has been limited by the Court to the issue of exhaustion of administrative remedies. *See* DN 19.

Plaintiff told Defendant Wilder that the boots were not, she "grabbed Plaintiff's right boot and violently struck the toe of the boot several times against the edge of . . . a table . . . causing several lacerations to the toe of the boot." After Plaintiff submitted a grievance concerning Defendant Wilder damaging his boots, Defendant Bramblett issued a prison-wide memorandum that graphite composite boots were unauthorized footwear and anyone possessing such boots would be required to mail the boots home. Defendants Howard and Thompson ratified the decision that composite-toe boots must be destroyed or mailed home

The complaint alleged that Defendant Wilder damaged his boots as retaliation for another lawsuit filed by Plaintiff in this Court, *Bradford v. Owens*, No. 3:11-cv-p488-S, and for filing grievances (Count 1). Plaintiff alleged that Defendants Bramblett, Howard, and Thompson retaliated against him for exercising his First Amendment rights by requiring him to send home or destroy his chess set (Count 2) and conspiracy to retaliate regarding the chess set (Count 3). He also alleged that Defendants Bramblett, Howard, and Thompson requiring Plaintiff to mail home his boots was retaliation (Count 4) and conspiracy to retaliate (Count 5). Specifically, Count 4 alleges that Defendants Bramblett, Howard, and Thompson's required Plaintiff to mail home his boots as "retaliation for the exercise of protected conduct – filing a grievance against Defendant Sgt. Wilder for damaging the footwear."

Defendants' motion for summary judgment argues that Plaintiff failed to exhaust his remedies as required by 42 U.S.C. § 1997e and that Defendants are qualifiedly immune from the claims set forth in the complaint.[2] Attached to the motion is an affidavit from Cathy Bucks who avers that she is the records custodian for grievances filed at LLCC. She avers that attached to

---

[2] Because the scope of the summary-judgment motion has been limited to the issue of exhaustion, the Court will not consider the question of qualified immunity.

her affidavit are "the records for all grievances . . . filed by Byron Bradford at [LLCC] regarding his boots and chess set."

In response (DN 23), Plaintiff argues that he did grieve having to mail his boots home. He contends that Defendants retaliated against him by deeming his boots to be unauthorized footwear and requiring him to mail them home only after Plaintiff filed a grievance against Defendant Wilder for damaging his boots. According to Plaintiff, Defendants' actions in deeming the boots unauthorized first surfaced on January 2, 2013, during the Warden's review of his grievance (12-356) regarding Defendant Wilder damaging his boots. At that time, Plaintiff argues that he asked the grievance coordinator about filing a new grievance but was told that he could not file a new grievance on any issue concerning the boots because of the already-pending grievance. Plaintiff argues that he was told that he could add the issue to the appeal to the Commissioner because the issue only surfaced during the Warden's review. Plaintiff's response appears to concede that he did not grieve his contention that his chess set was deemed unauthorized due to retaliation.

Plaintiff also filed a "Declaration Under Penalty of Perjury" (DN 24). In that document, Plaintiff declares, "After [Defendant] Howard responded to grievance 12-356 that my Timberland boots were unauthorized footware I approached LLCC Grievance Coordinator Cathy Buck to ask if I could file a new grievance on the matter because the issue of the boots becoming unauthorized only surfaced during the Warden's review." Plaintiff attaches to DN 24, a letter from him to Defendant Thompson dated February 12, 2013, which states that the issue in grievance 12-356 was that his boots were intentionally damaged by Defendant Wilder, but that during the course of the grievance his boots were declared to be unauthorized. He states, "I was unable to fully present my side of this issue, which only surfaced during the Warden's Review."

He also states, "a new grievance on the matter was deemed non-grievable." He continues, "It is still my contention that Sgt. Wilder damaged my property and the sudden ban on the footwear is a retaliatory ruse to cover up her actions." He asks that new footwear be provided to him at no cost because he had previously purchased his Timberland boots after being authorized to do so by prison officials.

Plaintiff also attaches a Memorandum from Defendant Bramblett dated January 10, 2013. That Memorandum states that "composite boots are considered to be safety boots and are not authorized for possession while incarcerated." That Memorandum states further: "If you currently own a pair of composite boots you will be given 45 days to mail to [sic] boots home, donate them or destroy them as they are not authorized property." Additionally, the Memorandum provides: "[A]s other facilities have authorized the purchase of the composite boots, the issue was brought before Central office's attention, the composite boots and was deemed inappropriate. . . . . Luther Luckett will pay to mail out these boots provide[d] they are mailed on or before the deadline . . . ."

Plaintiff filed another document, entitled Motion for Extension of Time to Supplement Response to Defendants' Motion for Summary Judgment" (DN 25), which contains an additional response. Defendants make no objection to this further response. Accordingly,

**IT IS ORDERED** that Plaintiff's motion (DN 25) is **GRANTED**.

That supplemental response argues that Plaintiff did in fact grieve his retaliation claim as to Defendants Bramblett, Howard, and Thompson, pointing to the fact that he used the words "retaliatory effort" in his appeal to the commissioner. That supplemental response also states that he "has chosen not to waste the Court's time and has all but conceded he may not have properly exhausted administrative remedies with regard to Defendant Sgt. Wilder."

4

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Prison Litigation Reform Act of 1996 (PLRA) amended 42 U.S.C. § 1997e(a) to require that inmates who have civil-rights claims must first exhaust all available administrative remedies before bringing an action under § 1983. *See Booth v. Churner*, 532 U.S. 731, 733-34 (2001). In a claim by a prisoner, failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants. *Jones v. Bock*, 549 U.S. 199, 204 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009). Because Defendants moved for summary judgment on this defense, it is their burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. at 325.

Under § 1997e(a), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are *available* are exhausted." (Emphasis added.) The Sixth Circuit and its sister circuits have recognized that a prison or prison official can engage in conduct that effectively renders administrative remedies unavailable to a prisoner. *See, e.g.*, *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 224 (6th Cir. 2011) (acknowledging that prison may render administrative remedies unavailable); *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010 ) ("Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable'. . . ."); *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002 ) ("[I]nmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies.").

Plaintiff concedes that his chess-set claims and claims against Defendant Wilder have not been exhausted. A review of the grievances filed by Plaintiff confirms that this is so. Those claims will be dismissed without prejudice for failure to exhaust. Thus, the only claim which remains is the retaliation claim against Defendants Thompson, Bramblett, and Howard for requiring Plaintiff to send home his boots.

Grievance 12-356 signed by Plaintiff on November 14, 2012, stated that on October 17, 2012, while making an inventory of Plaintiff's property, Defendant Wilder asked Plaintiff if his boots were steel-toed; she then began to strike the toe of the right boot against the table damaging it. The informal resolution to that grievance was that there was no evidence to support Plaintiff's complaint that his boots were damaged. Plaintiff indicated that he was not satisfied with the resolution, and on November 28, 2012, the grievance committee recommended that his

6

grievance be re-investigated as to whether his boots were damaged. On December 3, 2012, the grievance re-investigation report stated that Defendant Wilder said she did inspect the boots for contraband but did not damage them and that a review of the camera did not reveal any attempt by Defendant Wilder to damage Plaintiff's boots. Once again, Plaintiff indicated he was not satisfied with the outcome of his grievance. On December 11, 2012, the Grievance Committee stated that it could not determine that any damage to the boots had occurred. Plaintiff appealed, and the Warden's review dated January 2, 2013, stated that there was "no evidence to support the claim . . . . Therefore, the grievance is without merit. It has been determined that composite toe boots fall in the same category as inappropriate footware for the Department of Corrections."

The Grievance Appeal Form for Grievance 12-356 signed by Plaintiff on January 7, 2013, states:

> Warden Howard first claims several attempts to investigate the damage to my property. I have never seen him. He nor anyone else has ever requested to see the property. He next claims the shoes that I was authorized to purchase through the P.T. Department and which fully meet the specifications set out in CPP 17.1 are "inappropriate foot ware." He has made this determination 3 years after their purchase and only after I filed a grievance. This is a retaliatory effort to cover up SGT. Wilder's actions. I do not know what she was attempting to do when she violently struck the boot against the metal table . . . but she did it, and the boots are damaged.

The Commissioner's Review dated January 16, 2013, for that grievance states in pertinent part:

> As stated at all levels of the grievance, your claims that staff damaged your boots were investigated more than once and no evidence has been found to support your claims. Video was reviewed and no one was seen damaging the boots. In addition, after further review your boots were found to be unauthorized since they contain composite toes which are not allowed in the Department. Because of this you will have to dispose of the boots per policy guidelines.

Thus, Defendants' actions in deeming the boots unauthorized first surfaced on January 2, 2013, during the Warden's review of grievance 12-356, which had to do with Defendant Wilder

7

allegedly damaging his boots. Plaintiff argues that, at that time, he asked the grievance coordinator about filing a new grievance but was told that he could not file a new grievance on any issue concerning the boots because of the grievance that was already pending. Plaintiff argues that he was told that he could add the issue to the appeal to the Commissioner because the issue only surfaced during the Warden's review.

Plaintiff's "Declaration Under Penalty of Perjury" declares, "After [Defendant] Howard responded to grievance 12-356 that my Timberland boots were unauthorized footware I approached LLCC Grievance Coordinator Cathy Buck to ask if I could file a new grievance on the matter because the issue of the boots becoming unauthorized only surfaced during the Warden's review." Plaintiff continues: "I was informed by the Grievance Coordinator that I could not file another grievance because a grievance regarding the boots was still pending." Plaintiff also declares, "The grievance coordinator informed me to place any new issues in the appeal to the commissioner, which I did." Plaintiff's sworn statements in his "Declaration" are supported by the letter, which he attaches, addressed to Defendant Thompson dated February 12, 2013, in which he explains that the issue of the boots being unauthorized did not surface until after Plaintiff had grieved Defendant Wilder's alleged damage to his boots and that he was told that a new grievance regarding the authorization of the boots was not grievable.

The Court finds that prison officials' actions prevented Plaintiff from filing a new and separate grievance regarding his boots no longer being considered authorized footwear. Moreover, Plaintiff followed prison officials' instruction to add the issue concerning retaliation regarding his footware to his already pending grievance. Defendants cannot now claim that Plaintiff failed to exhaust properly his administrative remedies relating to that claim. *See Bruce v. Corr. Med. Serv., Inc.*, 389 F. App'x 462, 467 (6th Cir. 2010) (noting that prisoner attempted

to file a grievance and "was told Policy 501.01 would not allow it" in determining that remand was necessary to determine if defendant met burden of showing failure to exhaust); *Rancher v. Franklin Cnty.*, 122 F. App'x 240, 242 (6th Cir. 2005) (reversing dismissal for failure to exhaust where evidence that the rule as applied in practice, though not on paper, was to treat medical issues as non-grievable).  Thus, the Court finds that Defendants are not entitled to summary judgment in their favor on the issue of Plaintiff's claim related to retaliation concerning his boots.

### III.

**IT IS ORDERED** that Defendants' motion (DN 14) for summary judgment is **DENIED** with respect to exhaustion of Plaintiff's claim related to alleged retaliation by Defendants Bramblett, Howard, and Thompson requiring him to mail home his boots.  Because the scope of inquiry was limited to whether Plaintiff had exhausted his claims, the portion of Defendants' motion arguing that they are qualifiedly immune is **DENIED without prejudice** to raising that argument at a later date.

**IT IS FURTHER ORDERED** that Defendants' motion (DN 14) for summary judgment is **GRANTED** with respect to all of Plaintiff's other claims.  Those claims are **DISMISSED without prejudice** for failure to exhaust administrative remedies.

Date:


cc:     Plaintiff, *pro se*
        Counsel of record
4415.009

9